Filed 4/10/14  P. v. Calderon CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>ROGELIO CALDERON,<br><br>      Defendant and Appellant. | D063057<br><br><br><br>(Super. Ct. No. SCD127067) |

        APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

        Jose Garza Badillo for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Rogelio Calderon of first degree murder. On appeal, Calderon asserts the judgment should be reversed because the trial court had no proper basis to discharge a juror during deliberations. We reject this contention.

BACKGROUND

Calderon was charged with the murder of David Gonzalez, who was shot during an altercation at the home of Calderon's former girlfriend. The jury was instructed on first degree murder under theories of malice and felony murder (based on kidnapping or attempted kidnapping). It was also instructed on second degree murder and the lesser offense of voluntary manslaughter based on heat of passion. During jury deliberations, the court dismissed a juror and substituted an alternate juror. The jury convicted Calderon of first degree murder with a personal gun use enhancement.

Because Calderon's challenge to the dismissal of the juror does not implicate the facts underlying his murder conviction, we need only further summarize the portions of the record relevant to the court's decision to discharge the juror.

The jury started deliberating on Friday, May 4, 2012; it deliberated for the next two weeks (May 7 to May 18); and on May 18, the court discharged Juror No. 11 and replaced her with an alternate juror. The court was apprised of the concerns about Juror No. 11 on the morning of Friday, May 18, when the jury foreperson sent a note requesting to meet with the court and counsel, and the court convened a meeting with the foreperson in chambers. The foreperson told the court that Juror No. 11 was unable or unwilling to follow the instructions and law provided by the court, and the foreperson felt it was "absolutely necessary" to bring this to the court's attention and felt "responsible for

2

not doing this earlier."  Recognizing that removing a juror during deliberations was a serious and sensitive matter, the court held a hearing during which the court and counsel questioned each juror individually about their observations of Juror No. 11.  The court and counsel also questioned Juror No. 11.

When the court asked the jurors if Juror No. 11 was participating in the deliberations, the jurors said that she was deliberating to some extent.  When the court asked the jurors if she was refusing to follow the law as set forth in the instructions, the jurors consistently answered yes.

Two jurors (the foreperson and Juror No. 3) told the court that, before the jury had actually started deliberating or early in the deliberations, they heard Juror No. 11 say she could or would not vote for a particular charge.  More specifically, the foreperson stated that one or two days after the jurors started deliberations, and before they had looked at the elements for first degree murder, Juror No. 11 told him that she "[d]isagree[d] with this particular label" and she "will not vote on this label."[1]  The foreperson explained that Juror No. 11 was not saying she did not feel the elements of the label were not met, but rather was saying there was "no way [she was] going to vote on" that label.  The foreperson "fault[ed]" himself for not taking her comment seriously, but at the time he thought she would come to understand that the instructions, not just her initial opinion, had to be her guideline.

---

[1]	To preserve the sanctity of jury deliberations, the jurors were told not to disclose what they were actually discussing during deliberations.  Accordingly, the information provided by the jurors regarding Juror No. 11's statements was at times described in general, rather than specific, terms.

3

Juror No. 3 told the court that on the first day of deliberations, before the jurors talked about the law or the facts, Juror No. 11 announced, "[N]o way, I can't vote for first-degree murder," indicating that this was "off the table for her. Period." Juror No. 3 heard Juror No. 11 make this comment because he was sitting near her and the foreperson. Another juror (Juror No. 4) also described an early pronouncement by Juror No. 11, telling the court that on the first day of deliberations before the jury had actually deliberated, Juror No. 11 made an emphatic statement about one count indicating she would not change her mind.

The foreperson told the court that during the course of the ensuing deliberations Juror No. 11 mentioned multiple times that she would not vote on this particular issue, and she became "most vocal" and "adamant" about it the past Monday when they started the second week of deliberations. Without "looking at the elements," Juror No. 11 announced to the entire jury, " 'I already made up my mind. This is my decision. There is no way I'm going to vote this way.' " The foreperson felt it was his responsibility to tell jurors that they needed to follow the law set forth in the instructions, and he started reading the instructions. In response, Juror No. 11 pulled the instructions out of the foreperson's hands.

The foreperson stated that on the morning of Friday, May 18, when the jurors started discussing the issues of duress and consent (i.e., lack of consent relevant to first degree felony murder based on kidnapping), Juror No. 11 "threw up her hands"; said "she didn't want to go down that road"; and refused to discuss the matter. The foreperson said that Juror No. 11 refused to even acknowledge this element because she realized that if

4

she agreed to it, this would lead her to a decision that she did not want to make and that she had announced two weeks earlier she would not make. The foreperson told the court that Juror No. 11 was "unwilling to allow [the jurors] to discuss individual elements," and instead she had "ma[d]e up [her] mind without discussing every single element and applying it to the law or the jury instructions."

Juror No. 3 confirmed that during deliberations that morning Juror No. 11 refused to discuss consent "because it might lead to talking about the kidnapping charge" and "[s]he had absolutely no desire to talk about the kidnapping charge." Juror No. 3 elaborated that Juror No. 11's "opinion is that she is not going to vote that way . . . [¶] . . . [r]egardless of what the law says." Juror No. 3 stated that on the first day of deliberations Juror No. 11 had "made up her mind about first-degree murder . . . not knowing even specifically what she had to look at to determine" the charge.

In addition to the foreperson and Juror No. 3, all the other jurors (except for Juror No. 11 herself) answered affirmatively when the court asked if Juror No. 11 was refusing to follow the law. When asked to elaborate, Juror No. 1 said the juror was "refusing to look at the definitions" presented to them and did not "want to proceed with any of the instructions." Juror No. 4 said the juror was "close-minded" to the law; the jurors were trying to go "step-by-step"; and the juror would indicate "just no." Juror No. 5 said the juror was "not willing to go through the steps of what defines consent and see how consent applies to this case"; she was in effect saying she did not care what the law says because she was doing what she wanted; and at one point the previous day she "just crossed her arms and sat back and said, no, I refuse to consider that possibility." Juror

5

No. 6 said the juror was unwilling to consider the law "piece by piece in order to come to a complete whole," and even giving her the benefit of the doubt during earlier deliberations, this morning she had "crossed that line" and it was clear she was not following the law.

Juror No. 7 told the court that Juror No. 11 had "some preconceived notions ahead of deliberations" on a particular topic; the juror "basically eliminated a possibility before [they] even discussed it"; the juror said she "could not go there" and it was "off the table, [and] was not going to be considered" even though it had not even been discussed; and it appeared she made a decision "not to consider something that . . . needed to be considered . . . ." Juror No. 8 said that the juror did "not want to use the definitions that are required to follow the instructions." Juror No. 9 told the court that the juror was refusing to "break [the law] down" as set forth in the instructions and decide each matter because this would lead to conclusions that she did not agree with. Juror No. 10 reported that they were "trying to go over the rules and regulations to get from one place to another, and [Juror No. 11 was] refusing to go over those rules to get to the next step . . . ." Juror No. 12 said that earlier in the week Juror No. 11 "stated that [she] had already made up [her] mind on first-degree [murder] without considering all the points" and she was "refusing to even examine those key points in determining whether or not the defendant is guilty of those."

Juror No. 11, on the other hand, told the court that no juror was refusing to follow the law or refusing to deliberate; no juror announced his or her vote on an issue before

deliberating; and there was merely a conflict in what conclusions should be reached based on the same law.

After considering the jurors' responses and counsel's arguments, the court found that from the "very beginning" Juror No. 11 had a "fixed conclusion" and "deliberately refused to deliberate on the . . . issue of first-degree" murder. The court reasoned the juror did not merely have a "disagreement over the evidence" but rather desired to "not participate, not deliberate, and also not follow the law." The court ruled she had committed "serious and willful misconduct" and there was good cause to believe she could no longer perform her duties, and ordered that she be discharged.

## DISCUSSION

Calderon asserts the court erred in excusing Juror No. 11 because although she may have interpreted the law differently and strongly disagreed with the other jurors, the record did not show she was refusing to participate or follow the law.

To protect a defendant's right to the individual votes of an unbiased jury, great caution is required when deciding to excuse a sitting juror. (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 71.) When reviewing a trial court's decision to discharge a juror, we do not reweigh the evidence; however, we apply a standard that requires a somewhat stronger showing than is typical for abuse of discretion review, and we engage in a more comprehensive and less deferential review than simply determining whether any substantial evidence supports the court's decision. (*Ibid*.) The basis for a juror's discharge must appear on the record as a demonstrable reality, and we evaluate whether

7

the trial court's conclusion is manifestly supported by evidence on which the court actually relied. (*Ibid.*)

A trial court may dismiss a juror if it finds the juror is unable to perform his or her duty. (*People v. Alexander* (2010) 49 Cal.4th 846, 926.) For example, discharge is proper when a juror refuses to deliberate by expressing "a fixed conclusion at the start of deliberations and rebuff[ing] attempts to engage him or her in the discussion of other points of view raised by other jurors . . . ." (*Ibid.*) Further, a court may properly dismiss a juror who refuses to follow the law set forth in the instructions. (*Ibid.*) However, discharge is not warranted merely because a juror does not deliberate well or relies upon faulty analysis, or the juror disagrees with the majority about what the evidence shows, how the law should be applied to the facts, or how the deliberations should be conducted. (*Ibid.*) Also, a failure to deliberate does not occur simply because a "juror who has participated in deliberations for a reasonable period of time . . . expresses the belief that further discussion will not alter his or her views . . . ." (*People v. Cleveland* (2001) 25 Cal.4th 466, 485.)

The record shows by a demonstrable reality that Juror No. 11 was refusing to follow the law and to deliberate on certain matters set forth in the instructions. Two jurors described how at the commencement of deliberations Juror No. 11 announced that she was absolutely not going to vote for a particular charge (first degree murder) and that she made this announcement before the jury had reviewed the elements that can establish first degree murder. Thereafter, Juror No. 11 repeated this position, and when the jurors wanted to discuss particular matters set forth in the instructions (including issues

8

underlying the felony-murder theory) she refused to discuss them, and at one point she pulled the instructions from the foreperson's hands as he was reading them. The jurors, except for Juror No. 11 herself, consistently described her adamant refusal to discuss certain matters set forth in the instructions.

Juror No. 11's early announcement that she could not vote for a particular charge, combined with her persistent refusal to discuss legal points relevant to that charge, do not equate with a juror who simply expresses the futility of further discussion after a reasonable period of deliberation, or who merely disagrees with the majority's factual conclusions, legal interpretations, or manner of conducting the deliberations. Rather, the behavior of Juror No. 11 described by the jurors manifestly demonstrates that Juror No. 11 did not think a particular charge should be applied to the case, and accordingly she refused to discuss portions of the instructions that concerned that charge. The court did not err in finding she could not properly perform her duties and that discharge was warranted.

## DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.

9